# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SHELLY MCLEOD,

        Plaintiff,                         Case No.

v.                                      Hon.

52ND DISTRICT COURT and
JUDGE JOSEPH G. FABRIZIO,
in his personal capacity,

        Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## <u>PLAINTIFF'S COMPLAINT AND JURY DEMAND</u>

Plaintiff SHELLY MCLEOD, by and through her attorneys, HURWITZ LAW PLLC, brings this action against Defendants 52nd District Court and Chief Judge Joseph G. Fabrizio, and hereby alleges as follows:

**INTRODUCTION**

1.      Plaintiff Shelly McLeod ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 (First Amendment Retaliation), the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), 29 U.S.C. § 2601 *et seq.*, Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, and Michigan's Whistleblower Protection Act ("WPA"), MCL § 15.362, *et seq.*, seeking equitable, declaratory, and money damages against Defendants 52nd District Court ("Defendant 52nd District Court") and Chief Judge Joseph G. Fabrizio ("Defendant Fabrizio").

**PARTIES AND JURISDICTION**

2.      Plaintiff is a resident of Waterford, Michigan, which is in Oakland County.

3.      Defendant 52nd District Court is a governmental body established by the Michigan Legislature and is in Oakland County.

4.      Defendant Chief Judge Joseph G. Fabrizio is the Chief Judge of Defendant 52nd District Court.

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2

6.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claim.

7.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant's principal place of business is located and where the events giving rise to Plaintiff's claims took place.

8.     Plaintiff sues Defendant Fabrizio in both his individual and official capacity.

9.     At all times material to this Complaint, Defendant Fabrizio acted under color of law, meaning under color of the statutes, codes, ordinances, regulations, policies, customs and usages of the State of Michigan and/or 52nd District Court.

## FACTUAL ALLEGATIONS

### Plaintiff's Career with Defendant 52nd District Court

10.     Defendant Oakland County 52nd District Court is divided into four (4) divisions.  MCL 600.8123(9)(a-d).

11.     Plaintiff was employed within Oakland County and the 52nd District Court for approximately 32 years.

12.     In 1989, at the age of 17, Plaintiff began her employment within Oakland County at the 52-2 District Court, which consists of the Village of Clarkston and the townships of Springfield, Independence, Holly, Groveland, Brandon, Rose, and White Lake.  MCL 600.8123(9)(b).

13.     Plaintiff served as a Clerk for several years, then worked as the Unit Leader for the 52-2 District Court's Traffic Department through 1999.

14.     In 2000, Plaintiff was moved to Community Corrections as a Pretrial Investigator.

15.     In January 2001, Plaintiff began her employment at the 52-3 District Court, which consists of the cities of Rochester, Auburn Hills, Rochester Hills, and Lake Angelus and the townships of Oxford, Addison, Orion, and Oakland, MCL 600.8123(9)(c).

16.     The current 52-3 District Court judges are the Honorable Julie A. Nicholson, Honorable Nancy T. Carniak, and the Honorable Lisa L. Asadoorian.

17.     Plaintiff was hired as the Clerk for Judge Lisa L. Asadoorian.

18.     Plaintiff served as the Clerk for Judge Asadoorian until May 2003 when Plaintiff took time off to give birth to her child. From September 2003 until December 2005, Plaintiff worked part-time at the 52-3 District Court as a Clerk in the Criminal and Civil Divisions.

19.     In December 2005, Plaintiff began her employment in the 52-3 District Court's Probation Department as a Probation Investigator.

20.     In March 2008, Plaintiff was hired as a full-time Probation Officer.

21.     In November 2018, Plaintiff was promoted to Probation Department Supervisor for the 52-3 District Court.

22.    In the summer of 2019, Plaintiff assumed the responsibilities of Program Coordinator for the Specialty Treatment Court ("STC") program.

23.    As Program Coordinator for the STC program, Plaintiff was tasked with reporting to Judge Julie A. Nicholson and Judge Nancy T. Carniak.

24.    Amy Luce was hired as the Court Administrator for the 52-3 District Court in July 2019.

25.    Ms. Luce was Plaintiff's direct supervisor.

26.    Prior to Ms. Luce becoming Court Administrator, Plaintiff had no record of discipline, corrective action, or formal reprimands.

27.    Ms. Luce's predecessor, Thomas D. Fuentes, Esq., wrote a letter to Oakland County Human Resources in recognition of Plaintiff's performance as Probation Supervisor and requested an early merit increase for her.

28.    Mr. Fuentes' letter provides, in part:

> I don't think I could be given an easier task than to write a letter illustrating the ways in which Ms. McLeod goes above and beyond her job responsibilities on a daily basis… Since her tenure began, Shelly has done an exceptional job leading her department.  Her efforts are directly responsible for marked improvements in morale, confidence, and performance among probation staff… In this short amount of time, I have grown to trust Shelly's expertise and judgment implicitly, and rely on her regularly for guidance when dealing with probation matters.
>
> *        *        *
>
> Aside from doing her job impeccably, Ms. McLeod also goes above and beyond what her job description entails.

When a staff member was separated from employment in the beginning of 2019, Shelly personally took responsibility for the management and oversight of that employee's work product, assuming a caseload far greater than any probation supervisor before her—while still being responsible for managing the day-to-day operations of her department.    Shelly handled the situation flawlessly… I can confidently say that our Court would not have gotten through that situation as efficiently and effectively without Ms. McLeod's sound judgment and leadership.

Beyond managing times of crisis, Shelly continues to shine as a person that is persistent in advocating for her department, and proactively looking for more ways to improve existing policies and procedures.

### Plaintiff Required FMLA Leave

29.    On December 24, 2020, Plaintiff sustained an injury to her left knee.

30.    On December 30, 2020, Plaintiff was evaluated by Dr. Paul Lewis, D.O. at the Oakland Orthopedic Institute in Clarkston, MI.

31.    Dr. Lewis ordered Plaintiff to undergo an MRI on January 29, 2021.

32.    On February 5, 2021, Dr. Lewis examined Plaintiff's MRI results and determined that she tore the meniscus root in her left knee.  Dr. Lewis further advised that Plaintiff required arthroscopic surgery.

33.    Plaintiff was placed on leave pursuant to the FMLA from February 23, 2021 until August 22, 2021.

34.    On February 23, 2021, Plaintiff underwent arthroscopic surgery on her left knee.

6

35.    Plaintiff developed a staph infection following arthroscopic surgery.

36.    Plaintiff required emergency surgery on April 22, 2021 to treat the staph infection.

37.    After Plaintiff's April 22, 2021 surgery, Dr. Lewis told Plaintiff that the staph infection "destroyed the cartilage" in her knee.  Dr. Lewis performed a debridement—he cleaned Plaintiff's knee to remove all infected and necrotic tissue, foreign debris, and bone fragments.

38.    Plaintiff no longer has cartilage in her left knee.

39.    Plaintiff has been unable to walk without assistance since March 2021.

40.    Plaintiff's disability restricts her to using a wheelchair or rollator walker.

41.    After six months on leave, Plaintiff returned to work on August 23, 2021.

### Plaintiff's Return from FMLA Leave

42.    Ms. Luce never initiated or engaged in an interactive process to accommodate Plaintiff's disability upon her return.

43.    Within hours of Plaintiff's first day back to work on August 23, 2021, Ms. Luce sent Plaintiff a "written warning" and accused her of mismanaging STC documents.

44.    Ms. Luce's written warning never cited a policy that Plaintiff violated.

45.    Instead, Ms. Luce scolded Plaintiff for not using "organizational tools."

46.    Plaintiff had never been reprimanded for mismanagement or disorganization in her 30-year career with Defendant 52nd District Court.

47.    The next day, August 24, 2021, Plaintiff emailed Ms. Luce asking whether she should attend a STC session held by Judge Nicholson.

48.    Ms. Luce responded, "I do expect you to be working and not catching up socially with your department."

49.    Moments later, Ms. Luce sent an additional email stating, "We need to review your daily tasks to determine why you don't seem to have enough time to devote to duties assigned to you."

50.    Plaintiff's duties as STC Program Coordinator require her involvement in STC sessions.

51.    On August 25, 2021, Ms. Luce held a meeting with the Probation Department.  Criminal Department Leader Jamie Chaben and Office Supervisor Debbie Meltzer were also present.

52.    Ms. Luce explained she was upset because several members of the Probation Department wore white shirts on the day Plaintiff returned to work. Further, Ms. Luce maintained that the gesture was "rude" and that the Probation Department should have "discussed" it with her first.  Ms. Luce concluded by stating

she considers the Probation Department to be a bunch of "prima donnas" and "divas."

53.    Plaintiff learned shortly thereafter from her co-worker that members of the Probation Department planned to wear white shirts to signify Plaintiff's return to work.

54.    Later that day, on August 25, 2021, Plaintiff asked Ms. Luce whether judges should be copied on an email that Plaintiff was sending to their STC team members.  Ms. Luce responded, "I don't think it would be appropriate for you to make it look to the judges like you are on top of STC.  They are aware of the state it was left in."

55.    On August 26, 2021, Ms. Luce called Plaintiff into her office for an unscheduled meeting.

56.    Ms. Luce questioned Plaintiff's intelligence and called her "lazy, sloppy, and manipulative."

57.    Ms. Luce exclaimed, "memory is a tricky thing and it's interesting how your memory works when it's convenient for you."

58.    Ms. Luce told Plaintiff, "I don't trust you anymore."

59.    Ms. Luce yelled at Plaintiff for several minutes, and Plaintiff verbalized she was uncomfortable.

60.     Plaintiff asked Ms. Luce, "Why are you so mad at me?"  Ms. Luce did not respond.

61.     Ms. Luce placed Plaintiff on a "Corrective Action Plan" during the meeting.

62.     Upon information and belief, Ms. Luce personally authored the Corrective Action Plan.

63.     The Corrective Action Plan, in part, condemns Plaintiff for being unable to complete certain tasks while on FMLA leave.

64.     The bottom of the Corrective Action Plan provides, "*any discussion of this corrective action plan with 52 District Court staff will result in discharge from employment*.  This corrective action plan will continue until administration is confident in Shelly's ability to thoroughly perform her duties as Probation Supervisor."

65.     Ms. Luce did not advise Plaintiff that she did not have to sign the Corrective Action Plan, nor did she advise Plaintiff of her appeal rights.

66.     Plaintiff believed the Corrective Action Plan was retaliation for taking FMLA leave.

67.     Plaintiff called the Supervisor of Labor Relations, Julie Fisher, to request an "off the record" conversation regarding Plaintiff's fears of retaliation.

68.     Ms. Fisher apologized to Plaintiff for the Corrective Action Plan and told her, "Do the best you can to do what Amy wants on the Corrective Action Plan."

69.     Plaintiff worked diligently to address Ms. Luce's concerns raised in the Corrective Action Plan.

70.     Less than two months later, on or about October 22, 2021, Ms. Luce entered Plaintiff's office and advised that she was off the Corrective Action Plan.

71.     On or about January 17, 2022, Plaintiff spoke to Ms. Luce about an ongoing issue regarding three younger staff members congregating in the hall or each other's offices instead of working.

72.     Plaintiff informed Ms. Luce that she was going to meet with the three staff members and previewed what she prepared to say.

73.     Ms. Luce told Plaintiff, "I have your back 100%."

74.     Following the meeting, Plaintiff reported back to Ms. Luce, who did not indicate that she was upset with any of Plaintiff's actions.

75.     Upon information and belief, one of the probation officers is Ms. Luce's cousin by marriage.

76.     Upon information and belief, one of the probation officers complained to Ms. Luce about the meeting.

77.     On or about January 26, 2022, Ms. Luce called Plaintiff into a closed-door meeting, whereupon Ms. Luce reprimanded Plaintiff.

78.    Upon information and belief, Ms. Luce reprimanded Plaintiff for meeting with the three young staff members.

79.    Ms. Luce told Plaintiff she was not "balancing social conversation with work expectations so that staff feels that they can engage with coworkers on both a personal and professional level."

80.    Ms. Luce stated that she and "other staff" do not trust Plaintiff, and that Plaintiff could not regain their trust.

81.    Ms. Luce made personal attacks against Plaintiff, claiming she did not "create nor maintain a positive work environment at all times."

82.    Ms. Luce accused Plaintiff of telling other staff about the Corrective Action Plan and said it was "incredibly rude."

83.    Plaintiff believed that her job was being threatened again. She left the meeting feeling harassed, confused, bullied, and alone.

84.    Meanwhile, Plaintiff's physical health continued to deteriorate, and her physician advised that a leave of absence was necessary.

85.    During the week of January 24, 2022, Plaintiff held a meeting with the Probation Department to inform staff that she required short-term disability leave.

86.    Ms. Luce was present at the meeting.

87.    One of Plaintiff's Probation Officers asked if she was "going to be okay," and as Plaintiff began to answer, Ms. Luce interjected, "I don't mean to be rude, but we don't have time for this."

88.    Plaintiff was humiliated, embarrassed, and belittled in front of all her staff.

89.    Plaintiff's final day of work at Defendant 52nd District Court was on January 28, 2022, and she was placed on short-term disability leave for the remainder of her employment.

### Plaintiff Files Complaints Against Ms. Luce to Oakland County Human Resources and Reports Suspected Violations of Law

90.    Upon information and belief, on or around April 2022, another staff member of Defendant 52nd District Court, Elizabeth Arbus, filed a complaint with Oakland County Human Resources against Ms. Luce for retaliation upon returning from protected medical leave.

91.    Thereafter, on May 3, 2022, Plaintiff filed a formal complaint against Ms. Luce with Oakland County Human Resources personnel, including Rosie Wood from Labor Relations and Ms. Fisher.

92.    Plaintiff's initial May 3, 2022 complaint referenced and expanded on the above allegations.  Plaintiff concluded her first report against Ms. Luce by writing:

**I am a 49-year-old woman and I have never been spoken to the way that Ms. Luce speaks to me, nor have I ever felt the way that I do after Ms. Luce verbally harasses/bullies me**.  I have been a loyal employee of Oakland County and the 52nd District Courts for 32 years. I am proud to work for Oakland County and I have the job that I worked my way up the ranks to get.  In my 32 years of employment, I have never been reprimanded as evidenced by my personnel file.  Due to my loyalty and the gratification that I receive from my job, **I did not file a complaint before now due to fear of losing my job and/or the behavior worsening.    However, the treatment that I have received from her has negatively affected me personally, physically and psychologically to the point where I can no longer tolerate it**. **In fact, I had to increase my therapy sessions over the past year due in part to the way I have felt.**  I would be happy to provide a letter from my psychiatrist should you like one.

In closing, I look forward to having a discussion with Human Resources to provide additional information surrounding some of the events.  This is a very serious issue that has negatively affected several employees. Personally speaking, it has changed the course of my life. I find it hard to think that Oakland County would condone such behavior/treatment by one of their Administrators.

93.     Shortly after reporting to Oakland County Human Resources, Plaintiff learned that Ms. Luce filed an ethical complaint against Ms. Arbus with the Michigan Certification Board for Addiction Professionals ("MCBAP"), which Plaintiff perceived as retaliation.

94.     On May 5, 2022, Plaintiff sent an email to Mses. Wood and Fisher to rescind her complaint out of fear.   Plaintiff's email provides: "Due to recent developments causing me fear of retaliation, I am choosing to rescind my complaint,

for now, as long as Ms. Luce has not been advised of my complaint.  Can you tell

me whether she has been notified or not?"

95.    Ms. Fisher responded to Plaintiff's complaint on May 9, 2022: "First

let me say, I am sorry you have been having this experience!  This behavior is not

something the county condones, and the county certainly does not tolerate/support

retaliation!! What are the recent developments that made you withdraw in fear?"

96.    On June 7, 2022, Plaintiff emailed Ms. Fisher:

> I have a quick question—MCBAP wants to speak to me
> regarding the complaint that [Ms. Luce] filed against [Ms.
> Arbus].  Before I agree to speak to them, I wanted to know
> if I am even permitted to speak to them given that I am
> currently off on disability?  Additionally, I know that in
> the past if somebody called asking about a current/past
> employee that they were referred to HR.  Furthermore, I
> am not in agreement with some of [Ms. Luce's] allegations
> and would not want her to feel inclined to reprimand me
> because I disagreed with her.
>
> I also wanted to let you know that I am strongly
> considering having my complaint against Amy reinstated.
> I have been advised of some things that Amy said about
> [me] while I was out.  I will let [Ms. Wood] and you know
> once I have made a final decision.

97.    On June 8, 2022, Ms. Fisher responded:

> I guess that is your choice, but technically, while an
> employee is on disability, they are not to be performing
> work…now, the question becomes is answering questions
> regarding a complaint classified as work?  That I don't
> know.  But I think you can/should give a solid no if they
> are asking you to physically come in somewhere….
> otherwise, it is up to you.  **I strongly encourage you to**

**reconsider the rescinding of your complaint**.  Keep us posted.

98.   Plaintiff replied, "I have decided that I do want to go forward with my complaint against [Ms. Luce]."

99.   Two days later, on June 10, 2022, Plaintiff went to the Oakland County Human Resources office to be interviewed by Ms. Wood.

100.   Plaintiff was interviewed for approximately two hours.

101.   While describing Ms. Luce's conduct, Plaintiff perceived a look of concern on Ms. Wood's face.

102.   At the end of the interview, Ms. Wood asked Plaintiff to submit addition information regarding Ms. Luce's conduct.

103.   Further, Ms. Wood indicated that the Chief Justice of the 52nd District Court, Defendant Fabrizio, would be made aware of Plaintiff's concerns.

104.   Ms. Wood stated that Defendant Fabrizio "will have to do the right thing."

105.   On June 13, 2022, Plaintiff reported to Ms. Wood that Ms. Luce failed to accommodate Plaintiff's disabilities and that she believed Ms. Luce was unlawfully discriminating against her and older employees, stating, in relevant part:

> I am writing to submit the additional information that you requested on Friday.  First though, I would like to thank you for allowing me the opportunity to share with you the events that have taken place with Amy Luce over the last couple of years.  As I previously stated, filing a complaint

against her is something that I have wanted to do for some time, but **the fear of losing my job and/or dealing with any retaliatory actions kept me silent. Now that I may potentially lose my job** because I can no longer bare to work with her, I feel that I must stand up for myself…

The following is a list of comments that I made that were not in my formal complaint:

- Amy Luce indicated to my coworker that I was faking my knee injury-June 2021.
- Amy Luce asked the same employee why they would they come to my house to see me and have dinner while I was off on medical leave.
- Amy Luce told the same employee that she should not help me upon my return to work in August 2021. I have not been able to walk since March 2021.
- Amy Luce told the same employee that she really shouldn't contact me while I'm off on leave (January 2022) because she shouldn't get involved in whatever I "have going on".
- Amy Luce has said on more than one occasion in front of staff, "I don't care who you are or how long you have been here, nobody is safe."
- I had spoken to Amy about how I struggled in the department as a new supervisor because of the massive turnover we had and then the pandemic. She told me that as a Supervisor I just need to figure it out. When she hired Jamie Chaben (traffic and criminal supervisor) as the Deputy Court Administrator, she sent out an email to staff on 8/31/21 expressing that, "her job is very difficult under normal circumstances, however, the past 18 months have provided challenges that no one could have anticipated. Jamie has put her heart and sole into this court."
- Amy Luce had me participate via telephone in a department meeting while I was off on leave in March 2021.

17

- **Amy Luce never asked if there were any accommodations that I might need due to my disability. The area where I came in had a large heavy steel door where you had to use a swipe card to get in, it was very difficult for me to manage. On snowy days, the parking lot was rarely clean making it very difficult for me to roll through with my rollator. The sidewalk was tilted so I couldn't use it.**

*     *     *

One last thing that I would like to point out:  when you look at all of the staff that have left the court whether they were pushed out or fired, you realize that **a large percentage of the older employees with the most seniority that are at the higher end of the pay scale have been replaced by young inexperienced people that can be placed at the lower end of the pay scale. I feel that Amy is discriminating against and trying to eliminate the older staff that makes the most money.**

106.  Plaintiff effectively reported suspected violations of law—disability and age-based discrimination—to a public body.

### Plaintiff's Termination

107.  On July 19, 2022, Plaintiff emailed Mses. Fisher and Wood to ask, "If The Hartford has not made a determination for LTD by my return day, am I required to return back to work until the decision is made or just remain off and not provided any pay until the decision is made?"

108.  Plaintiff's short-term disability exhausted on August 5, 2022.

109.   Mses. Fisher and Wood responded, "No, you don't need to return to work.  You will remain off while they make their decision which is based off of what information physician submits.  When the decision is made your LTD will be dated back to the day after your short-term disability ended."

110.   On August 5, 2022, Plaintiff emailed Mses. Luce and Fisher to advise that Plaintiff's medical providers were working with Defendant 52nd District Court's third-party agent, The Hartford, to schedule Plaintiff's return to work from short-term disability leave on August 8, 2022.  Further, Plaintiff advised that her claim for long-term disability was still pending without a determination made.

111.   Plaintiff's email stated that, based on the instruction of Oakland County Human Resources, she was not required to return to work if The Hartford had not yet determined her claim for long-term disability by the expiration of her short-term disability.

112.   Hours later, on August 5, 2022, Ms. Luce emailed Plaintiff a termination letter, claiming:

> You have informed me that your LTD claim has not yet been approved or denied.  By filing a claim for LTD you have asserted that you are totally disabled from working. Consequently, it would be irresponsible of me to require that you return to work on Monday, August 8, 2022, with this claim still pending.

19

113. The termination letter further maintained that Ms. Luce discovered "severe deficits" in Plaintiff's performance during her absence on short-term disability.

114. Ms. Luce's basis for terminating Plaintiff for alleged "deficiencies" discovered in her performance while on leave is the same pretextual reasoning Ms. Luce used to place Plaintiff on the retaliatory Corrective Action Plan after she returned from FMLA in August 2021.

115. Ms. Luce cited Merit Rule 9, Section III A2, claiming Plaintiff may be separated from County employment once her Long Term Disability claim is approve and/or her annual leave, personal leave, and sick banks have been exhausted.

116. Plaintiff was previously told that she is *not* a Merit Employee.

117. Ms. Luce never engaged in an interactive process with Plaintiff to discover what reasonable accommodations existed for Plaintiff's return-to-work from short-term disability leave on August 8, 2022.

118. Upon information and belief, Ms. Luce suggested to Plaintiff's coworkers that she was faking her disability.

119. Upon information and belief, Ms. Luce told a Deputy Court Administrator that she was not permitted to give Plaintiff rides to work.

120. Upon information and belief, Ms. Meltzer told a Deputy Court Administrator that Plaintiff was off work just because she had a "cramp" in her leg.

121.   Upon information and belief, Ms. Luce learned of Plaintiff's report to Oakland County Human Resources alleging discrimination prior to terminating her.

122.   Plaintiff's report to Oakland County Human Resources played a factor in Defendant 52nd District Court's decision to terminate her employment.

123.   But for Plaintiff's disability, Ms. Luce would not have terminated her.

124.   But for Plaintiff's age, Ms. Luce would not have terminated her.

**Defendants Permitted Ms. Luce to Discriminate and
Retaliate Against Plaintiff**

125.   Upon information and belief, after Plaintiff and Ms. Arbus reported Ms. Luce to Oakland County Human Resources, at least three other employees from the 52-3 District Court contacted Ms. Wood to request interviews on Ms. Luce's conduct.

126.   On August 16, 2022, within two weeks of Plaintiff's termination, Ms. Wood emailed both Plaintiff and Ms. Arbus, stating:

> During the investigation, the information gathered and provided by the complainants were consistent/there was a pattern.  When interviewing Amy and the other witnesses, in general, the claims/complaints were not supported. With that, **the recommendation was for coaching on communication**.   This may not be what you were thinking/hoping...

127.   The three individuals who contacted Ms. Wood informed Plaintiff and Ms. Arbus that they were never asked to participate in an interview.

128.   Upon information and belief, approximately thirty-five (35) employees have either quit or been fired by Ms. Luce since she became Court Administrator of the 52-3 District Court in July 2019.

129.   Defendants enable and permit unlawful retaliation against employees who take protected medical leave.

130.   Defendants enable and permit discrimination against disabled employees.

131.   Defendant Fabrizio knew or should have known that Defendant 52nd District Court subjected Plaintiff to unlawful disability discrimination.

132.   Defendant Fabrizio knew or should have known that Defendant 52nd District Court unlawfully retaliated against Plaintiff for reporting to Oakland County Human Resources that she suspected Ms. Luce was discriminating against her.

## COUNT I
## 42 USC § 1983
## FIRST AMENDMENT RETALIATION
## AGAINST DEFENDANT FABRIZIO IN HIS PERSONAL CAPACITY

133.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

134.   The First Amendment of the United States Constitution, as incorporated into the 14th Amendment, prevents governments from abridging an individual's freedom of speech.

22

135.    The freedom of speech is not "lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415, 99 S. Ct. 693, 697, 58 L. Ed. 2d 619 (1979).

136.    The First Amendment protects an individual from retaliation when she has exercised her freedom of speech.

137.    The rationale for protecting a public employee's right to comment on matters of public concern is that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004).

138.    An employee speaking as a citizen is speaking on a matter of public concern when that speech can be fairly considered as relating to any matter of political, social, or other concern to the community.   Another consideration is whether the speech involves a subject of general interest and of value and concern to the public. *Mosholder v. Barnhardt*, 679 F.3d 443, 449 (6th Cir. 2012).

139.    Speech entails a matter of public concern when the speech involves issues for which information is needed to enable members of society to make informed decisions regarding their government's operation. *Banks v. Wolfe Co. Bd. of Ed.*, 330 F.3d 888, 892 (6th Cir. 2003).

140.   "Public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Id*. at 83-84.

141.   "When a public employee speaks on a matter that is merely related to the employee's profession, he or she is a member of the community most likely to have an informed and definite opinion and must be permitted to speak freely absent fear of retaliation*." Garvin v. Detroit Bd. of Educ*., No. 298838, 2013 WL 951118, at *11 (Mich. Ct. App. Feb. 26, 2013), citing *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

142.   Plaintiff's speech addressing unlawful disability-based discrimination was not made pursuant to her official duties as Probation Supervisor.

143.   "Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law." *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986).

144.   Plaintiff's speech was made as a citizen on a matter of public concern.

145.   Bringing to light potential or actual wrongdoings or a breach of the public trust are generally matters of public concern. *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684, 1691, 75 L. Ed. 2d 708 (1983).  Moreover, "discipline and morale in the workplace are related to an agency's efficient performance of its duties[.]" *Id*.

146.   Defendant punished Plaintiff for raising matters of public concern.

147.   Defendant permitted Plaintiff's termination for speaking out about how a court official engages in unlawful discrimination against disabled employees who require protected medical leave.

148.   Plaintiff's termination was motivated, at least in part, by the exercise of her First Amendment Right to free speech.

149.   Plaintiff's interest as a citizen in speaking on these matters was significant, as they concerned substantial matters of ethics and public safety that she was well informed and entitled to make.

150.   Plaintiff's speech had no impact on the efficiency of the Court, and therefore Defendants had no interest in curtailing this speech to promote the efficiency of the public services they performed through their employees.

151.   Defendant acted with deliberate indifference to Plaintiff's presumed and actual innocence.

152.   Defendant agreed to, approved, and ratified this unconstitutional conduct.

153.   It would have been plainly obvious to a reasonable official that such actions or inaction would deprive or lead to the deprivation of Plaintiff's constitutional rights.

154.   Defendant's actions and inaction, as set forth above, were fundamentally unfair to Plaintiff.

155.   As a direct and proximate results of Defendant's retaliation, Plaintiff has suffered emotional and physical distress, feelings of depression, mental and physical anguish, loss of reputation, humiliation, and embarrassment and the physical effects associated therewith, and will so suffer in the future.

156.   As a further and direct proximate result of Defendant's retaliation, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

**COUNT II**
**29 U.S.C. § 794 *et seq*.**
**DISCRIMINATION AND RETALIATION IN VIOLATION OF**
**SECTION 504 OF THE REHABILITATION ACT**
**<u>AGAINST DEFENDANT 52ND DISTRICT COURT</u>**

157.   Plaintiff incorporates by reference the forgoing paragraphs as if fully set forth herein.

158.   Plaintiff was an "individual with a disability" or regarded as such during all relevant times.  29 U.S.C. 705(20).

159.   Defendant is a government department subject to Section 504 of the Rehabilitation Act.  29 U.S.C. 794.

160.   Plaintiff's disabilities did not prevent her from performing the essential functions of her position.

161.   Defendant failed to continually engage in an interactive process.

162.   Defendant was legally required to do so before terminating her.

163.   Plaintiff was treated differently than others who had no disabilities.

164.   Plaintiff was treated differently than others who were not regarded as having a disability.

165.   Plaintiff engaged in protected activity when her disability caused her to take protected leave beginning on February 23, 2021 until August 22, 2021 and suffered adverse employment action when she was placed on a pretextual Corrective Action Plan upon her return.

166.   Plaintiff engaged in protected activity when her disability caused her to take protected leave beginning on January 28, 2022 and suffered adverse employment action when she was terminated on August 5, 2022.

167.   The proffered reason for Plaintiff's termination is pretextual.  Plaintiff was retaliated against for taking protected leave for her serious health condition.

168.   Defendant's actions were knowing and willful.

169.   Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits as a direct and proximate result, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to

employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

**COUNT III**
**29 U.S.C. § 2611, *et seq*.**
**RETALIATION IN VIOLATION OF**
**THE FAMILY MEDICAL LEAVE ACT**
**AGAINST ALL DEFENDANTS**
<u>**DECLARATORY AND EQUITABLE RELIEF**</u>
<u>**IN THE FORM OF REINSTATEMENT ONLY**</u>

170.   Plaintiff incorporates by reference the forgoing paragraphs as if fully set forth herein.

171.   Plaintiff's condition qualifies as a "serious health condition" under the FMLA because it has involved "continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

172.   The U.S. Department of Labor ("DOL") regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise" his or her rights under the FMLA.  29 C.F.R. § 825.220(c).

173.   Plaintiff dutifully and professionally performed her duties as an employee of Oakland County for three decades, including her four years as Probation Supervisor for Defendants.  It was not until returning to work after taking a protected FMLA absence that she faced adverse actions to her employment.

28

174. Defendants retaliated against Plaintiff by placing her on a Corrective Action plan due to her exercise of her rights under the FMLA, including taking leave for her FMLA-qualifying serious medical condition.

175. Defendants retaliated against Plaintiff by terminating her employment due to her exercise of her rights under the FMLA, including taking leave for her FMLA-qualifying serious medical condition.

176. The proffered reason for Plaintiff's termination is pretextual.

177. Plaintiff was retaliated against for taking protected leave for her serious health condition.

178. Defendants' actions in violation of the FMLA were willful.

**COUNT IV**
**DISCRIMINATION AND RETALIATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")**
**AGAINST ALL DEFENDANTS**
**DECLARATORY AND EQUITABLE RELIEF**
**IN THE FORM OF REINSTATEMENT ONLY**

179. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

180. Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1) and she was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

181. Defendants were legally required to engage in the interactive process before terminating Plaintiff.

182.   Defendants discriminated against Plaintiff on account of her "actual or perceived" disability when she was callously terminated on August 5, 2022.

183.   Defendants' actions in violation of the ADA were willful.

**COUNT V**
**MCL § 15.361, *et seq*.**
**RETALIATION IN VIOLATION OF**
**MICHIGAN'S WHISTLEBLOWER PROTECTION ACT**
**AGAINST ALL DEFENDANTS**

184.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

185.   At all relevant times, Defendants were an employer and Plaintiff was an employee covered by and within the meaning of the WPA, MCL § 15.361, *et seq*.

186.   Defendants and its Human Resources Department are public bodies within the meaning of the WPA, MCL § 15.361, *et seq*.

187.   MCL § 15.362 protects an employee who "reports or is about to report, verbally or in writing, a violation or a suspected violation of law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body[.]"

188.   Plaintiff engaged in protected activity under MCL § 15.362 because she reported to a public body that she suspected the Court Administrator for the 52-3 District Court was violating the law by retaliating against employees who exercise their rights under the FMLA and discriminating against disabled employees.

189.   Defendants retaliated against Plaintiff because of her protected activity in violation of the WPA by, *inter alia*, terminating her employment.

190.   As a direct and proximate cause of Defendants' violation of the WPA, Plaintiff has suffered emotional and physical distress, feelings of depression, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

191.   As a further and direct proximate result of Defendant's retaliation, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Shelly McLeod requests the following relief from this Honorable Court against Defendants:

a.   Declare that the aforementioned practices and actions of Defendant Fabrizio constitutes an unlawful violation of 42 U.S.C. § 1983;

b.   Declare that the aforementioned practices and actions of Defendant 52nd District Court constitutes an unlawful violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*.;

c.   Declare that the aforementioned practices and actions of Defendants constitute an unlawful violation of the FMLA, 29 U.S.C. § 2611, *et seq*., the ADA, 29 U.S.C. § 2601, *et seq*., and Michigan's Whistleblower Protection Act, MCL 15.362, *et seq*.

d. Award Plaintiff compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled, including all lost wages and benefits, past and future, in whatever amount she is found to be entitled;

e. Award Plaintiff compensatory damages for monetary and nonmonetary loss in whatever amount she is found to be entitled;

f. Award Plaintiff exemplary and punitive damages in whatever amount she is found to be entitled;

g. Declaratory Relief;

h. Reinstatement;

i. Award Plaintiff reasonable attorney's fees, costs, and interests; and

j. Award such other relief as this Court deems just and proper.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ Noah S. Hurwitz

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
*Attorneys for Plaintiff*

Dated: October 25, 2022

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHELLY MCLEOD,

             Plaintiff,                       Case No.

v.                                     Hon.

52ND DISTRICT COURT and
JUDGE JOSEPH G. FABRIZIO,
in his personal capacity,

             Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff SHELLY MCLEOD, by and through her attorneys, HURWITZ

LAW PLLC, hereby demands a trial by jury of the issues in the above-captioned

cause of action.

                                   /s/  *Noah S. Hurwitz*
                                   Noah S. Hurwitz (P74063)
                                   HURWITZ LAW PLLC
                                   *Attorney for Plaintiff*

Dated: October 25, 2022